683 So.2d 791 (1996)
Matthew J. MANUEL
v.
RIVER PARISH DISPOSAL, INC. and Guarantee Mutual Life Insurance Company.
Nos. 96-CA-302, 96-CA-303.
Court of Appeal of Louisiana, Fifth Circuit.
October 1, 1996.
*792 Patrick J. Berrigan, Rodney J. Lacoste, Jr., Slidell, for Appellants Jefferson Parish Hospital Service District No. 2 d/b/a East Jefferson General Hospital and Matthew J. Manuel.
Edgar K. Corey, New Orleans, for Appellees River Parish Disposal Inc. and Guarantee Mutual Life Insurance Company.
Before GOTHARD, CANNELLA and DALEY, JJ.
CANNELLA, Judge.
In a worker's compensation case, plaintiffs, Matthew Manuel (Manuel) and East Jefferson General Hospital (EJGH), appeal from an award of medical expenses and attorney fees. Defendants are Manuel's employer, River Parish Disposal, Inc. (RPD), and its insurer, Guarantee Mutual Life Insurance Company (Guarantee). We reverse the judgment which grants defendants' exception of prescription and amend to increase the medical expenses, award penalties, increase the attorney's fees and reassess legal interest.
On August 1, 1991 Manuel was injured in the course and scope of his employment when the garbage truck which he was driving left the roadway and crashed into a drainage ditch. Immediately before the crash, Manuel jumped from the truck. He suffered head injuries and was admitted to the Intensive Care Unit of EJGH. Manuel was then taken to surgery, where a subarachnoid screw was placed in his right frontal lobe to relieve the pressure caused by a contusion on his brain. While in Intensive Care, the pressure on his *793 brain was controlled with mechanical ventilation, diuretics, steroids, anticonvulsant and chemical paralysis. Ultimately, the pressure was controlled, the screw removed and he was weaned from the ventilator. He was discharged from EJGH on August 16, 1991.
On August 2, 1991, plaintiff's employer, RPD, was contacted by EJGH regarding their responsibility for payment. RPD's representative, Lisa Mink (Mink), informed EJGH that the claim would be paid as a workers' compensation claim. However, on August 14, 1991, Mink informed EJGH that the claim was not going to be paid because lab tests showed that Manuel had a controlled substance in his system. A letter confirming the denial of the medical expenses was received from Mink to that effect on August 19, 1991. Nonetheless, the hospital forwarded a bill to RPD on October 3, 1991 in the amount of $65,653.44 for services to Manuel during his hospitalization. When no payments were received from RPD, on February 21, 1992 EJGH filed a Request For Review of Physician's Fees (form 1016) with the Office of Workers' Compensation Administration (OWC). On August 3, 1992, Manuel filed a Disputed Claim for Compensation (form 1008) with the OWC. Defendants continued to deny the claims for both compensation and medical expenses because of the drug test results.
On April 26, 1993, Neurosurgical Associates/William J. Johnston, Jr., M.D., plaintiff's surgeon, and Parish Anesthesia/Joseph Spalitta, M.D., his anesthesiologist, filed a Request For Review of Physician's Fees with the OWC. RPD responded that the claims were being denied on the basis of intoxication and Manuel's wilful intent to injure himself.
On January 24, 1994, defendants filed an Exception of Prescription to the claims of Dr. Johnston, Jr. and Dr. Spalitta. On January 28, 1994, EJGH and Manuel filed a First Supplemental and Amended Petition to (1) recognize Manuel as a plaintiff in the EJGH claim to the extent that he was not already a plaintiff; (2) request as damages any and all amounts due Drs. Johnston and Spalitta; (3) request penalties, attorney's fees and court costs for RPD's continued arbitrary and capricious refusal to pay for the medical services and treatment provided Manuel. A minute entry on January 28, 1994 indicates that the hearing officer granted the exception of prescription as to the claims of the doctors, but the record does not contain a judgment.
On June 2, 1994, defendants filed an amended answer to EJGH's claim, alleging that the claim was denied because the charges were unreasonable and in excess of the OWC fee schedule, that Manuel was intoxicated under La.R.S. 23:1081(5), and that neither the charges nor the reasonableness of the medical care was submitted for utilization review. On the same date, defendants also filed an amended answer to Manuel's initial claim for compensation, asserting that, at the time of the accident, Manuel was intoxicated and willfully intended to injure himself.
On September 29, 1994, Manuel filed a Second Supplemental and Amended Petition to his Form No. 1008 compensation claim, requesting that RPD be held responsible for any and all medical expenses incurred as a result of the accident, including those owed to Drs. Johnston and Spalitta, along with penalties, attorney's fees and court costs because of RPD's continued arbitrary and capricious refusal to pay the medical expenses.
On November 16, 1994, defendants filed a supplemental answer denying the claims, further asserting that the claims for medical expenses owed to Drs. Johnston and Spallita were prescribed and had already been declared prescribed by the hearing officer and that, through Manuel, the doctors were attempting to do indirectly what they could not do directly. Defendants also contended further that Manuel was not entitled to the medical expenses for the doctors because the doctors' claims against Manuel were prescribed under the three year prescriptive period for open accounts.
On May 5, 1995, Guarantee deposited with the court the sum of $26,835, asserting that this was the amount due EJGH pursuant to the OWC reimbursement fee schedule that was promulgated and which went into effect after Manuel's accident.
*794 The trial of the claims was held on May 11, 1995. Immediately before trial, Manuel settled his claim for compensation benefits, but he reserved his rights for recovery of his medical expenses. On June 5, 1995, the hearing officer rendered a judgment in favor of plaintiffs in the sum of $46,260, including the deposited sum of $26,835, plus $6,206.25 in judicial interest from June 1, 1993 through the date of the judgment, June 5, 1995. In addition, the hearing officer found that defendants were arbitrary and capricious in failing to pay the reasonable amount of medical expenses and awarded EJGH $3,000 in attorney's fees. Finally, the hearing officer granted the exception of prescription filed by RPD relative to the claims by Drs. Johnston and Spalitta. On September 15, 1995, an additional sum of $31,267.25 was deposited into the registry of the court raising the total deposited to the total amount of the judgment, $58,102.25.
On appeal, plaintiffs first contest the amount awarded for the medical services provided by EJGH and second argue that the claim for the bills submitted by Drs. Johnston and Spalitta were not prescribed. Third, plaintiffs assert that the hearing officer erred in failing to award statutory penalties. Fourth, they contend that the award for attorney's fees was an abuse of discretion. Fifth, plaintiffs assert that the hearing officer erred in accepting Don Long as an expert in determining the reasonableness of hospital charges. Sixth, plaintiffs assert that the hearing officer erred in his calculation of judicial interest.

EJGH'S MEDICAL EXPENSES & EXPERT TESTIMONY OF DON LONG
Plaintiffs assert that the hearing officer erred in discounting by 30% the principal amount owed to EJGH for the services and treatment rendered to plaintiff during his hospitalization. They contend that he failed to apply the law for reimbursement that was in effect at the time of the accident, which required payment of the actual charges.
It appears that the hearing officer took the difference between the actual amount of the bill submitted by EJGH and the amount which defendants claimed would be due under the workers' compensation fee reimbursement schedule that was promulgated after Manuel's accident ($38,849), divided it in half ($19,425) and added that to the amount held in the court registry to reach a total amount for the medical services of $46,260. Plaintiffs contend that since there was no fee schedule when Manuel was injured, the actual charges should be paid to EJGH. Defendants argue that the hearing officer is empowered to determine the reasonableness of the cost of surgery, under R.S. 23:1291(B)(10). Further, they argue that the provisions in R.S. 1203 A were ineffective until the fee schedule was promulgated.
The law in effect at the time of the injury controls in workers' compensation cases. Mackie v. Coast Quality Construction, 95-668 (La.App. 5th Cir. 12/13/95), 666 So.2d 1173, 1175. At the time of this accident, the current law, La.R.S. 23:1034.2, authorizing the Director of the Office of Workers' Compensation to establish a reimbursement schedule for medical services, was in effect. It states:
Sec. 1034.2. Reimbursement schedule
A. The director of the office of worker's compensation administration shall establish and promulgate a reimbursement schedule for drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal and due under the Worker's Compensation Act and applicable to any person or corporation who renders such care, services, or treatment or provides such drugs or supplies to any person covered by Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950.
B. The director shall adopt, in accordance with the Administrative Procedure Act, rules and regulations necessary to establish and implement a reimbursement schedule for such care, services, treatment, drugs, and supplies.
C. The reimbursement schedule shall include charges limited to the mean of the usual and customary charges for such care, services, treatment, drugs and supplies. Any necessary adjustments to the reimbursement schedule adopted and established *795 in accordance with the provisions of this Section may be made annually.
D. Fees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or worker's compensation insurer ...
In addition, La.R.S. 23:1203(A), presently and in effect at the time of accident, states:
Sec. 1203. Duty to furnish medical expenses; prosthetic devices; other expenses
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. All such care, services, and treatment shall be performed at facilities within the state when available. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. [Emphasis Added]
The effective date of these provisions was January 1, 1989. However, the fee schedule was not promulgated and made effective until November 1, 1992, over one year after the date of the injury.
La.R.S. 23:1291(B)(10) lists the powers and duties of the Office of Worker's Compensation Administration. The pertinent provisions provide:
Sec. 1291. Creation, powers, and duties of the office of workers' compensation administration
B. The director shall have the following powers, duties, and functions:
(1) To supervise, direct, and account for the administration and operation of the office, its sections, functions, and employees...
(9) To enforce the reimbursement schedule established for drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.
(10) To require the use of appropriate procedures, including a utilization review process that establishes standards of review, for determining the necessity, advisability, and cost of proposed or already performed hospital care or services, medical or surgical treatment, or any nonmedical treatment recognized by the laws of this state as legal, and to resolve disputes over the necessity, advisability, and cost of same.
Our review of the statutes indicates that medical charges were to be paid according to the fee reimbursement schedule or the actual charges, whichever was less. R.S. 23:1203 A; 23:1034 A. Since the OWC had not set the reimbursement schedule at the time the medical services were rendered, the only law in effect was that the actual charges be paid. Thus, we find that the hearing officer was required to use actual charges as a starting point for the award. However, R.S. 23:1291 B contemplates that the charges be reasonable. Thus, the OWC is empowered through the hearing officer to determine whether the actual charges are reasonable. In this regard, the parties presented expert testimony.
Plaintiffs produced the testimony of Pierre Olivier, a defense witness called by plaintiffs, who was qualified as an expert in the administration of workers' compensation claims. He was employed by F.A. Richard & Associates, an insurance adjusting firm, and was responsible for the review of medical bills. He testified that prior to the enactment of the fee schedule, claims for medical expenses were paid according to the actual charges. However, under examination by defendants, he applied the per diem in effect according to the reimbursement schedule promulgated in 1992 to arrive at a present cost of the surgery and treatment of $26,835, unless there was something atypical about the treatment causing the charges to be higher than normal. Then, the fee schedule would permit a higher *796 reimbursement called an "outlier." In this case, it would have been $55,830.92. Olivier stated that Julie Smith, registered nurse and social worker who examined the medical bill, examined the claim for an outlier, but did not find any reason to apply it.
Defendants called Don Long (Long), the claims manager for State Claims Adjusters, to testify. He was qualified as an expert in paying workers' compensation hospital bills. Long supervised Mink, the adjuster responsible for the adjustment of Manuel's claim at the time the claim was received by RPD. However, Long admitted that he was not an expert in "reviewing bills," although he had seen thousands of them over the course of thirty years. Despite this lack of expertise, he testified that this bill was excessive and, at most, should amount to $50,000. On cross-examination, he was unable to point to any particular charge on the bill submitted by EJGH that was unreasonable. He did not review the individual charges or compare every charge to his codes. The only testimony that pointed out discrepancies in the bill was in the deposition testimony of Smith. She concluded that $900 was incorrectly billed. Otherwise, she stated that the charges were proper for the treatment. She did not give an opinion on the reasonableness of the charges. Notably, Long also stated that the reimbursement fee schedule would not have been relevant to adjusting this claim in 1991 because there was no fee schedule to use. In addition, the evidence shows that the reasonableness of the fee was not contested by defendants until a supplemental answer in 1994, three years after the EJGH first requested payment.
In deciding factual issues, the hearing officer is required to determine findings of fact upon competent evidence. R.S. 23:1317. Long testified that the charges were unreasonable, but was unable to state with particularity what charges were excessive. His opinion was based purely on his feelings, not on any specific items listed in the bill. His testimony was worth minimal weight. The only other evidence on reasonableness was that under the fee reimbursement per diem schedule promulgated in 1992, OWC would pay $26,835, a difference of $38,808.44 between the OWC rate and the actual charges of $65,643.44. The hearing officer divided the difference by two and added the total to the per diem rate to award EJGH $46,260. However, the 1992 schedule cannot be used to determine the reasonableness of the charges incurred in 1991. That schedule was based on costs in 1992. There was no evidence showing that these specific treatments and surgical costs did not actually cost what EJGH billed in 1991. Therefore, we find that EJGH is entitled to its actual charges, less $900 incorrectly billed, totaling $64,753.44.

PRESCRIPTION
Plaintiffs assert that the hearing officer erred in sustaining defendants' exception of prescription to the claim for medical expenses owed to Drs. Johnston and Spallitta. Defendants contend that the doctors' separate claims had been dismissed for prescription early in the proceedings and plaintiffs are attempting to achieve indirectly what the doctors could not do directly.
There is a minute entry in the record which states that the claims filed by the doctors and their corporations had been dismissed on an exception of prescription. However, no judgment granting the exception of prescription is in the record. Nonetheless, defendants objected to the claim, contending that it was prescribed when Manuel amended his petition to ask for any and all medical expenses.
The doctors filed their Request For Review of Physician's Fees on April 26, 1993. The accident occurred on August 1, 1991. La.R.S.23:1209 requires that all claims be filed within one year from the date of the accident. Thus, the petition filed by Drs. Johnston and Spalitta may have prescribed, but since that issue is not before us, we render no opinion on that matter. However, Manuel filed a claim for compensation on August 3, 1992. He is a different party than the doctors. His claim for medical expenses, whatever their nature or source, relates back to the petition for compensation. La.C.C. art. 1153. In addition, while the jurisprudence holds that a claim for medical expenses will not interrupt or suspend a claim for compensation, the converse is not true. Levatino *797 v. Domengeaux and Wright, P.L.C., 593 So.2d 721, 724 (La.App. 1st Cir.1991) writ denied, 596 So.2d 196 (La.1992). A claim for medical expenses is interrupted by a claim for compensation. Id. at 724. As stated in Levatino:
It is clear that medical payments do not interrupt prescription on a claim for weekly benefits. However, the converse is not true. In Ancelet v. Moreno's Air Conditioning, Inc., 331 So.2d 127 (La.App. 3rd Cir.1976) the Court held that weekly benefits do interrupt prescription on a claim for medical benefits incurred as the result of a job-related injury. The court pointed out that the policy of encouraging needed medical payments by the employer without extending exposure for weekly benefits is not present in considering whether payment of weekly benefits interrupts the prescription of medical benefits. Consequently, there is no policy reason for disallowing the interruption.
There are sound reasons to allow weekly benefits to interrupt a claim for medical expenses. It is grossly unfair for a claimant, such as the one in this case, to be disabled from a job-related injury and drawing weekly benefits for that disability, and yet be denied medical benefits for the disabling injury. Further, a disabled employee drawing weekly benefits would be encouraged to incur unnecessary medical expense for the sole purpose of keeping the claim viable.
In addition, a claim for compensation implies a claim for medical expenses. The claimant who is disabled is likely receiving medical care, whereas the reverse is not necessarily the case. Thus, we agree with the First Circuit Court of Appeal in Levatino and find that Manuel's claim for compensation interrupted the running of prescription on his claim for the medical expenses owed to Drs. Johnston and Spallita.
We are not persuaded by defendants' argument that the doctors' action against Manuel is prescribed under the prescriptive period for an open account so that Manuel is not entitled to recover those expenses. Whether the doctors' action against Manuel has prescribed should not be considered by the hearing officer nor is it noticeable by this court. The exception of prescription is subject to rebuttal at a contradictory hearing. There are reasons why that action may not be prescribed.
Based on our review, therefore, we reverse the judgment sustaining defendants' exception of prescription. Since there was no evidence presented contesting the reasonableness of the charges, the judgment will be amended to award Manuel the medical charges submitted by Drs. Johnston and Spalitta in the amounts of $4,120.00 and $1,360.00, respectively.

STATUTORY PENALTIES
Plaintiffs contend that the hearing officer erred in failing to award penalties, after determining that defendants were arbitrary and capricious in failing to pay a reasonable amount of the disputed medical expenses. R.S. 23:1201 E provides for a 12% penalty on compensation or medical benefits that the employer fails to timely pay, unless the right to the benefits has been "reasonably controverted". An employer may avoid penalties if it relied on competent medical evidence in deciding not to pay for medical treatment. Williams v. Hospital Service, Inc., 95-214 (La.App. 5 Cir. 9/20/95), 663 So.2d 749, 754, writs denied, 96-0160, 96-0190 (La.3/15/96), 669 So.2d 418, 422. In Williams, this court stated:
The assessment of attorney's fees by the administrative judge upon finding that the employer was arbitrary and capricious is largely a matter within the judge's wide discretion and will not be reversed on appeal absent a showing of abuse of that discretion ...
La.R.S. 23:1201(E) sets out the penalty provision in the act. La.R.S. 23:1201(E) provides for a twelve percent (12%) penalty on any compensation or medical benefit that the employer/insurer fails to timely pay, unless the employee's right to such compensation or benefit has been "reasonably controverted." La.R.S. 23:1201.2 subjects the employer or insurer to the imposition of reasonable attorney's fees when the failure to pay any worker's compensation claim within sixty (60) days of notice is found to be arbitrary, capricious or without *798 probable cause. The jurisprudence has held that an employer or insurer may avoid the imposition of penalties and attorney's fees if it relies upon "competent medical advice" in the decision not to guarantee the payment of a recommended medical treatment ...
In this case, defendants did not deny the medical benefits on the basis that Manuel was not injured or that he was not injured in the course and scope of his employment. Defendants refused to pay because they concluded that he was intoxicated, which is not a defense to a claim for medical payments. R.S. 23:1081(13) requires the employer to pay for the reasonable medical care provided the intoxicated employee until such time as he is stabilized and discharged from the acute facility. Defendants continued to deny the claim on the intoxication defense until 1994. At that time, they changed their defense to the unreasonableness of the fees, but defendants' witnesses testified that they never attempted to adjust the claim or to pay an amount that they considered reasonable. The hearing officer correctly found that conduct to be arbitrary and capricious, but he failed to award penalties. Since the right to the medical expenses was not reasonably controverted, either Manuel or EJGH is entitled to recover a portion of statutory penalties. However, defendants correctly note that prior to 1993, R.S. 23:1201 did not permit recovery of penalties for the failure to pay medical benefits. In addition, prior to 1995, the health care provider did not have the right to recover either penalties or attorney's fees. That right was enacted in the 1995 revision of R.S. 23:1201 in par. F. (4).
Although, the pre-1993 law prohibits Manuel from recovering penalties on medical expenses and the pre-1995 law prevents EJGH from recovering penalties, the penalty provision is based on failure to pay and uses a per day formula for the recovery of the penalties. Since defendants have not paid the full amount, penalties are warranted from the effective date of the particular revisions of the statute giving the right to penalties for medical benefits and providing a right to the health care provider to recover penalties and attorney's fees. However, on April 12, 1995, Guarantee tendered and deposited $26,835 into the court registry, effectively stopping the accrual of interest and penalties on that amount, since penalties are awarded only on the unpaid medical benefits. See: R.S. 23:1201 F. In addition, on September 15, 1995, Guarantee tendered and deposited into the registry of the court the amount of $58,102.25, the total amount of the hearing officer's award, plus interest and costs.
Considering the law and facts, Manuel, as the claimant, is entitled to recover penalties on the medical benefits from January 1, 1993 (the effective date of the revision allowing penalties on medical benefits) for each day that defendants failed to pay until April 12, 1995. After April 12, 1995, penalties no longer accrued on $26,835 because that amount is considered paid since it was deposited in the court registry, but continued to accrue on the balance. ($64,753.44 minus $26,835 = $37,918.44.) As to Manuel, he is entitled to recover these amounts until June 29, 1995, when the statute provides the right to recover the penalties to the health care provider. Thus, EJGH, as the health care provider, is entitled to penalties from June 29, 1995 on $37,918.44 until September 15, 1995. After September 15, 1995, penalties began to accrue on $19,425, the remaining unpaid medical expenses. These penalties are to be calculated in conformity with the provisions of R.S. 23:1201 F. We will amend the judgment accordingly. See: Williams v. Hospital Service, Inc, 663 So.2d at 755.

ATTORNEY FEES
Plaintiffs assert that the attorney's fees should be increased because of the time and effort required to refute the multiple defenses raised by defendants as reason for the delay in paying the medical expenses. They argue that the case was pending in the trial level for over four years and that there were numerous pleadings filed by defendants alleging various defenses which required plaintiffs to spend considerable time and effort to respond. Ultimately, the defenses were either abandoned or rejected by the hearing officer. Moreover, plaintiffs argue, *799 the attorney's fees awarded by the hearing officer ($3000) are insufficient when compared to the amount of medical bills at issue, which exceed $70,000. As we noted above, attorney's fees were not available to the health care provider until the 1995 revision of R.S. 23:1201 in par. F. (4), effective June 29, 1995. Attorney's fees for the health provider are limited to the actual hours worked. Since the trial was held in May 1995, EJGH is not entitled to recover attorney's fees for the proceedings leading to trial. Manuel, however, is entitled to recover reasonable attorney's fees. The hearing officer awarded $3000 in attorney's fees to EJGH. Consequently, we amend the judgment to award the fees to Manuel. After our review of the record, we find that the hearing officer did not abuse his discretion in the amount awarded for attorney's fees and affirm.

JUDICIAL INTEREST
Finally, plaintiffs assert that the hearing officer erred in calculating judicial interest. Plaintiffs contend that the hearing officer calculated the interest from June 1, 1993 to June 5, 1995 (date of trial). However, the petition by EJGH was filed on February 21, 1992. Therefore, plaintiffs argue that judicial interest should run from that date. In addition, plaintiffs assert that interest on the amount awarded EJGH should be calculated through the date on which the damages are actually paid, not the date of judgment. Plaintiffs also argue that judicial interest accrues on penalties and attorney's fees from the date of judgment.
In Crooks v. Town of Ball, 94-466 (La.App. 3 Cir. 11/2/94), 649 So.2d 597, 600, the Third Circuit Court of Appeal stated:
La.R.S. 23:1201.3(A) provides that any compensation awarded and all payments thereof directed to be made by order of the Administrative Hearing Officer shall bear judicial interest from the date ordered paid by the Administrative Hearing Officer until the date of satisfaction. Because the language of this statute is mandatory, we conclude that an award of legal interest in workers' compensation cases is not discretionary with the court, as the interest attaches automatically until the judgment is satisfied, whether prayed for in the petition or mentioned in the judgment. This is the construction given a statute in pari materiae, La.R.S. 13:4203, which provides that legal interest "shall" attach from date of judicial demand on all judgments sounding in tort. Dufrene v. Duncan, 634 So.2d 19 (La.App. 1st Cir. 1994).
However, interest mandated under La. R.S. 13:4203, the tort statute, is from date of judicial demand. We note that interest mandated under the Workers' Compensation Statute runs from date of judgment...
In Hall v. McDonald Insulation, 537 So.2d 328, 333 (La.App. 1 Cir.1988) the court awarded plaintiff interest on attorney's fees from the date of the trial court judgment, reversing the trial court award of interest from date of judicial demand. Thus, we find that the hearing officer erred in declaring that the interest on the medical expenses and attorney's fees began on June 1, 1993, but ended on June 5, 1996. Interest on the medical expenses, penalties and attorney's fees runs from date of judgment until the judgment is paid. However, interest does not run on the amount tendered and deposited into the registry of the court. Thus, interest does not run on the $26,835 for medical expenses that was tendered prior to trial. It does run on the medical expenses over $26,835 from date of judgment until the tender in September 15, 1995 and from the balance over the tendered amount until paid. Interest also runs on the penalties on the unpaid and untendered judgment amounts from date of judgment until paid. It runs on attorney's fees from date of judgment until the tender on September 15, 1995. (The $3000 award for attorney's fees was included in the September 15, 1995 tender/deposit.)
Accordingly, the judgment is hereby amended to award EJGH $64,753.44 in payment of Manuel's medical expenses. The judgment is further amended to award Manuel $4,120.00 for medical treatment provided to him by Neurological Associates and Dr. William Johnston and $1,360.00 for medical treatment provided to him by Parish Anesthesia Associates and Dr. Joseph Spalitta.
*800 The judgment is hereby amended to award Manuel statutory penalties on $64,753.44 in unpaid medical benefits beginning January 1, 1993 until April 12, 1995, after which, penalties are to be calculated on the amount of $37,918.44, the balance remaining after the tender/deposit by defendants, ($26,835$64,753.44) until June 28, 1995. EJGH is awarded penalties from June 29, 1995 on the unpaid balance of $37,918.44 until September 15, 1995. EJGH is awarded penalties from September 15, 1995, on the remaining unpaid balance of $19,425, all to be calculated in accordance with R.S. 23:1201 F.
We affirm the attorney fees award of $3000, but amend the judgment to award the fees to Manuel. The judgment is further amended to award legal interest to EJGH on all untendered/undeposited and unpaid amounts of this judgment, including attorney's fees and costs,[1] but less penalties, from the date of the trial court judgment until paid. Interest on penalties is awarded from the date of this judgment, until paid.
The judgment is otherwise affirmed.
AFFIRMED IN PART, AMENDED IN PART AND AS AMENDED, AFFIRMED.
NOTES
[1] See: Cajun Electric Power Co-op v. Owens-Corning Fiberglass Corp., 616 So.2d 645 (La. 1993).