PARRO, J.
 

 12A former employer appeals a judgment in a workers’ compensation proceeding in favor of the claimant, awarding benefits for a temporary total disability, medical expenses, penalties, and attorney fees. For the following reasons, we amend, and as amended, we affirm and remand.
 

 Facts and Procedural History
 

 Reynold James (James) was employed by A & B Builders (A & B) as a pipefitter. James filed a disputed claim for workers’ compensation benefits against A & B in connection with a knee injury that allegedly occurred while he was working for A & B on Saturday, January 27, 2007. In his claim form, James alleged that he twisted his knee when he lifted a 75 pound tripod. Although James came into contact with his supervisor before leaving work due to inclement weather within an hour after the alleged incident, James failed to mention it to his supervisor that day.
 

 Because of swelling and pain in his knee, James was taken by ambulance early the next morning to a hospital’s emergency room for treatment. The medical records indicate that the reported origin of his complaint varied. James reported to the triage nurse that he fell down a ladder on the job and landed on his right knee. The emergency room physician was told that the knee pain began the day before and that James had twisted his knee again that morning with worsening pain. The hospital’s admission summary indicated that the onset of the pain was “s/p fall.” On Monday, January 29, 2007, James called to inform his supervisor that he would not be at work because he was in the hospital awaiting surgery on his knee for a meniscus tear. The employer’s report of injury indicated that A & B was informed of the incident on January 30, 2007.
 

 Following the trial of this matter, the workers’ compensation judge (WCJ) found that James had sustained a compensable injury to his right knee on |aJanuary 27, 2007, during the course of his employment. A & B was ordered to pay temporary total disability (TTD) benefits at the maximum rate from January 28, 2007, through April
 
 *543
 
 4, 2007. Additionally, A & B was ordered to pay “in full” the medical expenses of six enumerated health care providers. James was awarded $2,000 in penalties for A & B’s failure to timely pay compensation benefits, $2,000 in penalties for A & B’s failure to approve and pay James’ medical benefits, and $10,000 in attorney fees. A & B appealed, challenging the duration of James’ award of compensation benefits, the amount owed in reimbursement of medical expenses, and the award of penalties and attorney fees.
 

 Duration of Compensation Benefits
 

 The WCJ found that James was entitled to compensation benefits from the day following his injury, January 28, 2007, until released by his treating physician to return to work without restrictions, April 4, 2007. Although James was not released by his treating physician until April 4, 2007, A & B argues that James would have completely recovered from his injury within four w^eeks had he complied with the orders of his treating physician following his discharge from the hospital. Notably, the defense of prolonged recovery was urged by A & B in its answer. Accordingly, A & B seeks on appeal to have the duration of James’ compensation benefits reduced from eight-and-a half weeks to four weeks.
 

 A claimant’s recovery is largely dependent on the exercise of his own will to recover and to effect recovery by adherence to a reasonable program of treatment.
 
 See Myles v. Forcum-James Co.,
 
 16 So.2d 542, 544 (La.App. 2nd Cir.1943). Therefore, where an employee’s recovery is retarded and his disability prolonged because of his failure to cooperate with his physician and his wilful refusal to avail himself of means for his recovery furnished by his employer, such employee cannot recover compensation beyond the period that |4would have been necessary for his recovery had he properly cooperated.
 
 Reeves v. Union Sulphur Co.,
 
 193 So. 399, 402 (La.App. 1st Cir.1940);
 
 [1]
 

 see Morgan v. Lumbermen’s Mut. Cas. Co.,
 
 317 So.2d 7,14 (La.App. 1st Cir.1975);
 
 see also O’Niel v. M.W. Kellogg Co. Inc.,
 
 190 So. 182, 185 (La.App. 1st Cir.1939)..
 

 Dr. John L. Fambrough, an orthopedic surgeon, testified that James reported having twisted his knee at work. A MRI revealed a torn lateral meniscus in his right knee. In Dr. Fambrough’s opinion, this type of tear is consistent with the injury related by James. On January 30, 2007, Dr. Fambrough performed arthroscopic surgery. James was discharged from the hospital on February 2, 2007, and ultimately released from Dr. Fambrough’s care without restrictions on April 4, 2007, when James reportedly was no longer experiencing pain and his knee was doing well. On release, Dr. Fambrough instructed James to return for follow-up care immediately if his knee began to swell or if he experienced pain or any other symptoms.
 

 James began follow-up care with Dr. Fambrough the week after he was discharged from the hospital. At his February 23 visit, Dr. Fambrough noted that James was not cooperating. Dr. Famb-rough recalled that James had been very active and was walking about. Dr. Famb-rough emphasized the importance of staying off of his knee to his recovery. By March 7, 2007, James was still not obeying Dr. Fambrough’s orders, and Dr. Famb-rough once again emphasized the importance of keeping stress off of his knee to
 
 *544
 
 reduce the inflammation. In Dr. Famb-rough’s opinion, the continued effusion of James’ knee was attributable to his failure to use crutches and stay off of his knee.
 

 According to Dr. Fambrough, after arthroscopic surgery of the nature received by James, a patient is generally able to get about without the use of crutches within two or three weeks. However, Dr. Famb-rough opined that the ^presence of grade four changes in James’ knee may have prolonged his recovery a little longer than two to three weeks. Dr. Fambrough testified that in the absence of the problems encountered due to James’ failure to follow orders, he probably would have released James to return to work within four weeks. Nonetheless, Dr. Fambrough explained that any such release would have been with the restriction that James avoid activities that would place stress on his knee such as squatting and flexing of the knee.
 

 The record supports a finding that James’ failure to use crutches, to stay off his knee, and to keep his leg elevated may have prolonged his recovery past the four-week recovery period typical for this type of injury. Nonetheless, considering the totality of the evidence presented in this case, we are unable to find manifest error in the WCJ’s failure to find that James’ disability would have otherwise ceased after only four weeks or that James’ injured knee would have been restored to a condition which would have permitted its normal use by him within four weeks. Accordingly, we find no error in the duration of the award of TTD benefits.
 

 Recovery of Medical Expenses
 

 With respect to the payment of James’ medical expenses, the WCJ ordered:
 

 A & B Builders shall pay the following medical expenses in full to the following providers:
 

 (1) North Oaks Medical Center: $22,195.60
 

 (2) Dr. Stephen G. Scully: $ 94.00
 

 (3) Northshore Imaging Associates: $ 240.00
 

 (4) Dr. Laurence May: $ 448.00
 

 (5) Plaza Orthopedic: $3,161.00
 

 (6) Acadian Ambulance service: $ 719.90
 

 Relying on LSA-R.S. 23:1034.2, A & B contends that the WCJ legally erred in ordering it to pay the health care providers the full amount of their charges for |fimedical expenses.
 

 Concerning the payment of medical expenses, LSA-R.S. 23:1034.2, in pertinent part, provides:
 

 A. The director of the office of workers’ compensation administration shall establish and promulgate a reimbursement schedule for drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal and due under the Workers’ Compensation Act and applicable to any person or corporation who renders such care, services, or treatment or provides such drugs or supplies to any person covered by Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950.
 

 B. The director shall adopt, in accordance with the Administrative Procedure Act, rules and regulations necessary to establish and implement a reimbursement schedule for such care, services, treatment, drugs, and supplies. [Footnote omitted.]
 

 C. (1) The reimbursement schedule shall include charges limited to the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies....
 

 [[Image here]]
 

 D. Fees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or workers’ compensation insurer.
 

 
 *545
 
 * * *
 

 Additionally, LSA-R.S. 23:1203 states, in pertinent part:
 

 A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.
 

 B. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers’ compensation administration utilization review rules.
 

 **
 

 Concerning the powers and duties of the Office of Workers’ Compensation Administration, LSA-R.S. 23:1291(B) provides, in pertinent part:
 

 The director shall have the following powers, duties, and functions:
 

 (1) To supervise, direct, and account for the administration and operation of the office, its sections, functions, and employees.
 

 [[Image here]]
 

 (9) To enforce the reimbursement schedule established for drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.
 

 (10) To require the use of appropriate procedures, including a utilization review process that establishes standards of review, for determining the necessity, advisability, and cost of proposed or already performed hospital care or services, medical or surgical treatment, or any nonmedical treatment recognized by the laws of this state as legal, and to resolve disputes over the necessity, advisability, and cost of same.
 

 ⅜ * *
 

 These statutory provisions indicate that medical charges are to be paid according to the fee reimbursement schedule or the actual charges, whichever was less.
 
 See
 
 LSA-R.S. 23:1203(B);
 
 Manuel v. River Parish Disposal, Inc.,
 
 96-302 (La.App. 5th Cir.10/1/96), 683 So.2d 791, 794-95. Accordingly, we conclude that the WCJ legally erred in failing to recognize that each health care provider’s recovery could not exceed the fees set forth in the reimbursement schedule adopted by the director of the OWC as authorized by LSA-R.S. 23:1034.2. Therefore, the judgment will be modified to reflect such statutory limitation.
 
 [2]
 

 
 *546
 

 Penalties and Attorney Fees
 

 A & B urges that the WCJ erred in awarding penalties and attorney fees since it reasonably conti-overted James’ claims for compensation and medical |8benefits. Louisiana Revised Statute 23:1201 (F) covers situations where the employer fails to commence payment of compensation benefits timely, fails to pay continued installments timely, or fails to pay medical benefits timely.
 
 Roussell v. St. Tammany Parish School
 
 Bd., 04-2622 (La.App. 1st Cir.8/23/06), 943 So.2d 449, 461,
 
 writ not considered,
 
 06-2362 (La.1/8/07), 948 So.2d 116. An employer’s failure to authorize a necessary medical procedure is deemed to be a failure to furnish the benefits required by LSA-R.S. 23:1203, and the failure to authorize such treatment subjects the employer to the sanctions of LSA-R.S. 23:1201(F).
 
 Authement v. Shappert Eng’g,
 
 02-1631 (La.2/25/03), 840 So.2cl
 
 1181,
 
 1186. Under the applicable statutory provisions of Subsection 1201(F), penalties and attorney fees are recoverable unless the claims are reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the claimant.
 
 Brown v. Texas-LA Cartage. Inc.,
 
 98-1063 (La.12/1/98), 721 So.2d 885, 890. The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers’ compensation action is essentially a question of fact. Factual findings are subject to the manifest error or clearly wrong standard of review.
 
 Authement, 840
 
 So.2d at 1188-89.
 

 James testified that his foreman had assigned him to perform a job that required the use of a tripod. The only available tripod was located on the top floor, requiring him to climb a flight of stairs to retrieve it. He explained that the injury to his knee occurred when he lifted the 75 pound tripod to put it on his back to carry it. He heard a cracking sound and felt a slight pain at that time, but did not think that it was anything out of the ordinary. Afterwards, he carried the tripod down the stairs.
 

 Within the next 45 minutes to an hour, James realized that he had |3sustained an injury. During that time, he had been reassigned to a different job by his foreman, one that required that he retrieve wenches from the tool room. Before reporting to that job, James learned that the workers had been discharged from work for the day due to rain.
 

 James explained that after leaving work, he drove straight home, which took 45 minutes to an hour. During the ride home, he experienced problems sitting in his car because he had to sit with his right foot stretched out. When he arrived home, James told his wife, Charlotte, that his knee was hurting, and he asked her to rub it. When he woke up Sunday morning, the pain had worsened. He tried to ease the pain by applying hot compresses, rubbing the area, and taking Tylenol. When his leg became too painful to move, the Jameses called for an ambulance to take James to the hospital.
 

 James testified that Ms. James provided the information to the hospital in connection with his admission and discharge. The admission form disclosed that the accident was work related and had occurred on January 27, 2007, at approximately 9 a.m. The history and physical form dated January 28, 2007, reveals that James had Wasted his knee on the job two days earlier resulting in pain and swelling. The emergency room report dated January 28, 2007, indicated that James had experienced pain in the right knee since the day before and that James reported having
 
 *547
 
 twisted bis knee again that morning with worsening pain. The triage nurse’s notes indicate that James “fell coming down a ladder on the job, landed on right knee, pt c/o pain, unable to bear wt on leg and swelling to knee.” The admission summary discloses that the onset of his knee pain was “s/p fall.” The radiology report indicates that James twisted his right knee and complained of pain in the lateral aspect of the right knee with swelling, rendering him unable to bend his knee. The discharge summary indicates that James twisted his knee on the job two days prior to admission. According to James, his wife was unclear as to what had happened | |()and probably told hospital personnel that he had fallen on a ladder even though he told her that he had not fallen.
 

 James recalled having first reported the incident to his foreman, Guy Thibodeaux, on Monday, January 29, in a telephone call from the hospital. James testified that he told Mr. Thibodeaux that he had hurt his knee when he went to retrieve the tripod. On January 29, James informed Jeanne Jones, a patient financial counselor for the hospital, that his injury resulted from an accident that occurred at work. On January 30, Ms. Jones contacted Charles Dawson, James’ boss, concerning authorization for treatment of James. Mr. Dawson told Ms. Jones that although he was aware that James was going to have surgery, no one had notified A & B of an injury on the job.
 

 After leaving the hospital, on Friday, February 2, 2007, James went to his place of work to get his paycheck. At that time, he informed Mr. Dawson and his other supervisor of the facts surrounding the incident.
 

 Although the notations in hospital records setting forth the events surrounding James’ injury varied, they are consistent in reporting that his injury was the result of a. work-related accident. Based on the totality of the evidence in the record, we are unable to find that the WCJ manifestly erred in failing to find that A & B reasonably controverted James’ claim to benefits.
 

 Additional Attorney Fees
 

 James answered the appeal and requested additional attorney fees for the work necessitated by the appeal. Additional attorney fees are usually awarded on appeal when a party appeals, obtains no relief, and the appeal has necessitated additional work on the opposing party’s counsel, provided that the opposing party appropriately requests an increase.
 
 Loup v. Louisiana State Sch. for the Deaf,
 
 98-0329 (La.App. 1st Cir.2/19/99), 729 So.2d 689, 694;
 
 Hall v. McDonald Insulation,
 
 537 So.2d 328, 333 (La.App. 1st Cir.1988). Because A & B has obtained relief on the appeal, we do not award additional |n attorney fees to James for the appeal.
 
 See Ibrahim v. Hawkins,
 
 02-0350 (La.App. 1st Cir.2/14/03), 845 So.2d 471, 485;
 
 Guidry v. Millers Cas. Ins. Co.,
 
 01-0001 (La.App. 1st Cir.6/21/02), 822 So.2d 675, 684.
 

 Decree
 

 For the foregoing reasons, the judgment of the Office of Workers’ Compensation Administration is amended to declare that the obligation of A & B Builders to pay North Oaks Medical Center, Dr. Stephen G. Scully, Northshore Imaging Associates, Dr. Laurence May, Plaza Orthopedic, and Acadian Ambulance is subject to the statutory provisions governing reimbursement, as well as any other applicable laws. Otherwise, the judgment is affirmed. Moreover, this matter is remanded to the Office of Workers’ Compensation Administration for a determination of the amount owed to each health care provider in accordance with this opinion. Costs of this appeal are assessed to A & B Builders.
 

 AMENDED IN PART; AS AMENDED, AFFIRMED; REMANDED.
 

 
 *548
 
 McDONALD, J., dissents in part with respect to the award of penalties for failure to approve and pay medical benefits.
 

 [1]
 

 . The employee has the duty of using all reasonable means afforded him for his recovery and in cooperating with his employer in minimizing the damage and loss sustained by the employer whenever he can reasonably do so.
 
 Reeves,
 
 193 So. at 402.
 

 [2]
 

 . This limitation applies whether the services were provided for emergency treatment and nonemergency treatment.
 
 See
 
 LSA-R.S. 23:1142.