WELCH, J.
|2The defendants, Fresh Pickin’s Market, Inc. (“Fresh Pickin’s”) and its workers’ compensation insurer, Louisiana Restaurant Association Self Insurers Fund (“LRA”) appeal a judgment awarding the plaintiff, First Choice Surgery Center of Baton Rouge, LLC (“First Choice”), fees for surgical services rendered to an injured employee of Fresh Pickin’s, penalties, and attorney fees. Finding no error in the judgment of the workers’ compensation judge (“WCJ”), we affirm the judgment.
FACTUAL AND PROCEDURAL HISTORY
First Choice is an ambulatory surgery center in Baton Rouge, Louisiana, which is owned by Dr. Arnold Feldman, a physician specializing in the treatment of chronic pain disorder, including spinal disorders. On November 29, 2005, Tricia Trentham, a workers’ compensation claimant and an employee of Fresh Pickin’s, underwent spinal surgery — a two-level discectomy — that was performed by Dr. Feldman at First Choice. Following the surgical procedure, on December 1, 2005, First Choice submitted insurance claims, which were coded according to internationally recognized billing codes, to LRA for Dr. Feldman’s professional services, for the anesthesia services, and for facility fees for the procedures, supplies, medications, and injections provided to Ms. Trentham.
The professional and anesthesia services, as billed, were paid, but the amount billed for facility fees for services and supplies was not paid in full. Specifically, the total amount of facility fees billed was $38,244.40, and on January 31, 2006, LRA remitted payment for the facility fees in the total amount $5,552.63. This payment represented payment for only two of the five coded procedures that were billed, and did not include payment for any supplies, medications, and injections. First Choice apparently appealed the amount of the Inpayment to QMedtrix, the repricing company that adjusted the payment to First Choice on behalf of LRA, but the appeal was denied.
Therefore, on July 24, 2006, First Choice filed a disputed claim for compensation against Fresh Pickin’s and LRA alleging that First Choice provided health care services to Tricia Trentham, an employee of *797 Fresh Pickin’s who was insured by LRA, that the total for services rendered was $38,244.40, but LRA remitted payment of $5,552.63, that LRA made no allowance for the main billed procedure, and that LRA materially deviated from the reimbursement schedule for an ambulatory surgery center. Fresh Pickin’s and LRA answered, contending that First Choice was not underpaid and was not entitled to additional sums because all payments owed or that could have been owed relating to the treatment of Tricia Trentham had been paid in accordance with the Louisiana Workers’ Compensation Act.
On September 25, 2006, a second payment in the amount of $3,009.75 was received from LRA. This payment was for the same two coded procedures that were billed and partially paid with the January 31, 2006 payment.
A trial on the merits was held on February 2, 2011. Following trial, the WCJ took the matter under advisement, and on February 24, 2011, the WCJ rendered judgment, with oral reasons, in favor of First Choice. The WCJ, in its oral reasons, made the following findings:
The issue, as presented to me by the parties, was what amount can be received by First Choice for a facility fee for the services rendered on behalf of [Tricia] Trentham on November 29th of 2005.
The Court finds that the facility fee for those services rendered on that date are $20,019.11. This is the figure that [First Choice] calculated during [its] closing argument, taking into consideration the reduction of certain elements of the original bill, which were deemed during the proceedings to have been misbilled [by] the facility and should have been handled with the physician’s amount and gives credit ... for the amounts that had already been paid.
14The only evidence that the Court had concerning the usual and customary fee for these services in this area was the testimony of Ms. Beth Broadway, the administrator [for First Choice]. It was her testimony when they make their bills out, when the make their charges, that they are neither the least expensive nor the most expensive. I had no other evidence concerning the ... expenses for this procedure in this area.
Dr. Feldman testified that there are at least two other physicians in the area that do this specific procedure. Dr. Isa-za, ... [whose] group has their own outpatient center, and then a physician with Ochsner’s which ... has available to them the hospital and an outpatient facility. I had no other evidence of any kind as to what the usual and customary fee might be.
I have the documents [EOB] that show what ... [the] Utilization Review facility ... Qmedtrix Systems ... that purports that zero amount is the reasonable, usual and customary fee for this procedure in this area. And that just makes absolutely no sense. That’s the only evidence I have from the defense ....
The Court takes note of the fact that the bill was properly paid for the secondary level. The bill was properly paid for supplies, but nothing was paid for the primary level, and there being no fee scheduled for this procedure set based upon the testimony also of Ms. Sharon Ruiz, the [billing] encoder — and I was very impressed with her testimony concerning how she broke down the billing codes and how they were put together, the ... codes and where she found them. Doing it this way is the only way that the Utilization Review Rules allow for until a specific code for an endoscopic discectomy — some kind of set amount *798 is produced by the fee schedules.... But at this point in time, what we have is the usual and customary fee in the area, and the only testimony I have on what is the usual and customary fee in the area ... is the evidence as provided by Ms. Broadway.
The Court takes note of the fact that the bill certainly was not perfect when it was submitted. First Choice themselves recognized that and ... took that into consideration in [its] closing argument and in recalculating what [it] felt would have been 90 percent of the usual and customary fee, minus the ... amounts [that] ... should have gone on the physician’s fee, and also taking ... into consideration what had been paid.
In terms of penalties and attorney’s fees, I would not be awarding necessarily a penalty and attorney’s fees on the failure to pay this much money because this is ... pretty much a new situation. But the fact that nothing was paid and the procedures were not followed by First Choice or LRA in Utilization Review cries for a penalty and attorney’s fee. [LRA] paid nothing on that first segment and they are required to pay at least what they think they should pay, or for them to take it up with our in-house Utilization Review Medical Services Department. The procedures say that if they do not feel that they should pay 90 percent of the bill that’s presented, then they are ^supposed to take it up with our in-house procedures and they did not. And they did not offer or tender anything on that first level. Therefore, the [c]ourt is awarding a $2,000 penalty and the [c]ourt is awarding a $5,000 attorney’s fee.
On March 21, 2011, the WCJ signed a judgment in favor of First Choice and against Fresh Pickin’s and LRA in the amount of $20,019.11 for facility fees for surgical services rendered to Ms. Trent-ham, penalties in the amount of $2,000.00, and attorney fees in the amount of $5,000.00. From this judgment, Fresh Pickin’s and LRA appeal.
ASSIGNMENTS OF ERROR
On appeal, Fresh Pickin’s and LRA contend that: (1) the WCJ committed legal error in awarding payment to an outpatient surgical center at an amount in excess of the maximum surgical per diem rate allowed by LAC 40:1.2505 for the exact same procedure if it had been performed at a full service hospital on an inpatient basis; (2) alternatively, the WCJ committed legal error in failing to apply the reasonableness- analysis set forth in Johnson Bros. Corporation v. Thibodaux Regional Medical Center, 2000-1678 (La.App. 1st Cir.9/28/01), 809 So.2d 430 to the outpatient surgery center bill at issue in this case; (8) the WCJ committed legal error in shifting the burden of proof to the defendants where the outpatient surgery center failed to meet its initial burden of proving that its facility bill complied with the Louisiana Workers’ Compensation Act and Rules; (4) alternatively, the award of fees for surgical services was calculated incorrectly; and (5) the WCJ committed legal error or manifest error in awarding penalties and attorney fees because the defendants presented issues that were res nova and reasonably controverted the claim.
LAW AND DISCUSSION

Payment of Medical Expenses

(Assignment of Errors 1, 2, 3, and 4)
IfiAn employer’s obligation to furnish medical expenses is governed by La. R.S. 23:1203, which provides that “the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and *799 surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.” La. R.S. 2S:1203(A). The employer’s obligation under this section, however, is limited by La. R.S. 23:1203(B), which provides:
The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to [La.] R.S. 23:1034.2 or the actual charge made for the service, whichever is less.
Pursuant to La. R.S. 23:1034.2, the director of the office of workers’ compensation is given the responsibility of establishing a reimbursement schedule and adopting rules and regulations for the establishment and implementation of the schedule. “Should a dispute arise between a health care provider and the employee, employer, or worker[s’] compensation insurer, either party may submit the dispute to the office in the same manner and subject to the same procedures as established for dispute resolution of claims for workers’ compensation benefits.” La. R.S. 23:1034.2(F)(1).
Based on the above provisions, an employer’s obligation is to pay medical expenses according to the fee reimbursement schedule or the actual charges, whichever is less. James v. A & B Builders, 2009-0781 (La.App. 1st Cir.10/23/09), 29 So.3d 541, 545. In the absence of a reimbursement schedule, the starting point for an award of medical expenses is the actual charge. Manuel v. River Parish Disposal, Inc. 96-302, 96-303 (La.App. 5th Cir.10/1/96), 683 So.2d 791, 795. However, implicit in the above provisions is a requirement that the charges be reasonable. See Manuel, 683 So.2d at 795. The reasonableness of a particular medical fee depends on what is customary in a community for similar 17operations involving similar pre-operative and post-operative procedures and complications. Adler v. Hospital Service Association of New Orleans, 278 So.2d 177, 180 (La.App. 4th Cir.1973).
The director of the office of workers’ compensation administration has not established a reimbursement schedule for the specific procedures at issue in this case. However, since First Choice is an ambulatory surgical center, the formula set forth in LAC 40:1.2507 applies to its charges. This provision provides, in pertinent part: “Outpatient hospital and ambulatory surgery services will be reimbursed at covered charges less a ten percent (10%) discount. The formula for calculating payment amount is:
(BILLED CHARGES) - (NONCOV-ERED CHARGES) = COVERED CHARGES x .90 = PAYMENT AMOUNT.”
As previously set forth, the WCJ determined that the amount owed to the facility was $20,019.11. This amount was apparently calculated in the following manner:
Amount Initially Billed $38,244.40
Less code 72295(x 2) $ 4,327.20
Less code 62290( x 2)[1] $ 2,160.00
Covered charges $31,757.20
x .90
Total Payment Owed $28,581.48
*800 Less payment received $ 8,562.37[2]
Outstanding payment owed $20,019.11
|RThe evidence in the record offered by First Choice supports the calculation made by the WCJ. The defendants did not contest or present any evidence that any listed procedures and supplies that were billed were not covered. Instead, the defendants contend that the WCJ should have applied the per diem limits in LAC 40:1.2505 (relative to reimbursement for inpatient hospital services) to the facility charges at issue, or alternatively, that the WCJ should have evaluated the reasonableness of the facility fee charges. We find no merit to the defendants’ contentions.
By its terms, LAC 40:1.2505 is only applicable to inpatient hospital reimbursements; it is not applicable to either outpatient hospital or ambulatory surgery services. Outpatient hospital and ambulatory surgery services are reimbursed pursuant to the formula set forth in LAC 40:1.2507. Furthermore, this provision does not provide a limit or a cap as to what can be charged for the outpatient hospital or ambulatory surgical services. The only limitation on reimbursement is provided in La. R.S. 23:1203, previously set forth, which provides that it is “limited to the reimbursement determined to be the mean of the usual and customary charges.”
The WCJ noted in its reasons for judgment that the only evidence concerning the “mean of the usual and customary charges” as well as the reasonableness of First Choice’s bill was the testimony of Ms. Broadway, whom the WCJ found to be very credible. Ms. Broadway explained during her testimony the various factors considered by the facility in setting its fee, including internal data, such as costs, and external factors or comparative data from national regional, and local levels, and that it sets its costs based on averages to keep prices competitive, such that First Choice was neither the cheapest nor the most expensive for their services. LRA offered no evidence contradicting Ms. Broadway’s testimony concerning the reasonableness of First Choice’s facility bill 1 ;)or that First Choice deviated from the mean of the usual and customary charges for such services. Accordingly, we conclude that the WCJ correctly awarded First Choice payment for its medical services under the formula set forth in LAC 40:1.2507, that the WCJ considered the reasonableness of First Choice’s bill based on the evidence presented, and that the WCJ properly calculated the amount owed by LRA to First Choice based on the evidence presented at trial.
Penalties and Attorney Fees (Assignment of Error Number 5)
Lastly, the defendants claim that the WCJ erred in awarding penalties and attorney fees because the issues it raised were res nova and because they reasonably controverted the claim. As previously noted, the WCJ ordered the defendants to pay penalties in the amount of $2,000.00 and attorney fees in the amount of $5,000.00.
The determination of whether an employer (or insurer) should be cast with penalties and attorney fees is essentially a question of fact subject to the manifest error or clearly wrong standard of review. James, 29 So.3d at 546. The failure to timely pay medical benefits subjects the employer to a penalty of $50 per calendar *801 day for each day that the medical benefits remain unpaid, not to exceed $2,000, plus reasonable attorney fees for each disputed claim. La. R.S. 23:1201(F). Louisiana Revised Statutes 23:1201(E) provides that “[m]edical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.” La. R.S. 23:1201(E).[3]
According to the WCJ’s reasons for judgment previously set forth hereinabove, in finding that penalties and attorney fees were warranted, the WCJ found LRA failed to timely pay the medical benefits, failed to properly challenge | inthe claim for medical expenses by First Choice, and failed to reasonably controvert the claim. Based on our review of the record, particularly in light of LRA’s failure to produce any evidence at trial to support its position, we cannot conclude that the WCJ’s award of penalties and attorney fees was manifestly erroneous.
CONCLUSION
For all of the above and foregoing reasons, the March 21, 2011 judgment of the WCJ is affirmed. All costs of this appeal are assessed to the defendants/appellants, Fresh Pickin’s Market, Inc. and Louisiana Restaurant Association Self Insurers Fund.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.

. Codes 72295 and 62290 were the two codes that First Choice conceded at trial should have been billed with Dr. Feldman’s professional services, and therefore, those sums were excluded in the amount of the judgment prayed for by First Choice and granted by the WCJ.

. This sum includes the January 31, 2006 payment and the September 25, 2006 payment.

. See also LAC 40:1.5101, which provides that "[n]ot paying or formally contesting such bills by filing LDOL-WC-1008 (Disputed Claim for Compensation), with the Office of Workers' Compensation within 30 days of the date of receipt of the bill may subject the Carrier/Self-Insured Employer to penalties and attorneys fees."