PATRICIA RIVET MURRAY, Judge.
 

 Lin this workers’ compensation case, the parties dispute an alleged underpayment of medical expenses by the employer, Jo Ellen Smith Convalescent Center (“Jo Ellen Smith”), to the treating health care provider, Avenue Surgical Suites. Jo Ellen Smith admits that it authorized the treatment, but it disputes the amount that it was billed for the treatment. Jo Ellen Smith contends that the reduced amount it tendered to Avenue Surgical Suites was equal to the usual and customary charge for the services provided and thus satisfied its obligation under the Workers’ Compensation Act. From a judgment in Avenue Surgical Suites’ favor awarding additional reimbursement of medical expenses, penalties, and attorneys’ fees, Jo Ellen Smith appeals. For the reasons that follow, we amend the judgment to award additional attorneys’ fees for the work performed on appeal and affirm the judgment as amended.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 On December 21, 2008, Jennifer Muse sustained a work-related injury to her lower back while employed by Jo Ellen Smith. As a result of her injury, she was | ^referred by her treating physician to Avenue Surgical Suites for pain management treatment, which her employer authorized.
 
 *1105
 
 At Avenue Surgical Suites, she was treated by Dr. Norbert Ming, an interventional pain physician, on three service dates: June 22, 2009; July 27, 2009; and August 24, 2009. On each service date, Dr. Ming performed the same procedures: a bilateral SI transforaminal epidural steroid injection (“ESI”), a right L5 selective nerve root block, a fluoroscope of the sacral region, and a fluoroscope of the lumbar region. For each service date, Avenue Surgical Suites billed Jo Ellen Smith through its third party administrator, Workers’ Compensation-Risk Management Services, Inc. (“Risk Management”), the same amount: $10,300.
 
 [1]
 

 In response to each bill, Risk Management tendered a check for $3,500 accompanied by an explanation of benefits form (“EOB”).
 
 [2]
 
 The EOB for each service date was virtually the same. On each EOB, Risk Management made two reductions to the $10,300 billed amount: $1,030 (“BR/Red”) and $5,770 (“Other/Red”). After unsuccessfully seeking reconsideration of the three bills from Risk Management, Avenue Surgical Suites submitted the bills to the Louisiana Workforce Commission, Office of Workers’ Compensation (the “Commission”), for a review of the disputed medical reimbursement. The Commission recommended reimbursement for these services in accordance with the Louisiana [¡¡Office of Workers’ Compensation Medical Reimbursement Schedule, Chapter 25, Hospital Reimbursement, § 2507 Outpatient Reimbursement, which provides:
 

 Outpatient hospital and ambulatory surgery services will be reimbursed at covered charges less a ten percent (10%) discount. The formula for calculating payment amount is:
 

 (BILLED CHARGES) - (NONCOV-ERED CHARGES) = COVERED CHARGES x .90 = PAYMENT AMOUNT [ (the “Formula”) ]
 
 [3]
 

 In its recommendation letters, the Commission instructed that “[i]f any party disagrees with this recommendation, a formal dispute may be filed with the appropriate hearing office by filing LWC-WC-1008, Disputed Claim for Compensation.”
 

 In April 2010, Avenue Surgical Suites filed a 1008-Disputed Claim for Compensation seeking additional reimbursement from Jo Ellen Smith.
 
 [4]
 
 In its claim form, Avenue Surgical described the bona-fide dispute as follows:
 

 This patient underwent treatment at Avenue Surgical Suites (a state licensed ambulatory surgi-eenter) on 6/22/2009, 7/27/2009 and 8/24/2009. A dispute of reimbursement occurred for these dates. The appropriate protocol was followed. The Office of Workers’ Compensation recommended reimbursement per the state statute (documents 1 A, B & C dated 12/22/2009, 1/6/2009 and 4/5/2009 respectively) for these dates of service. Avenue Surgical Suites is asking for
 
 *1106
 
 $17,310.00 (see attachment 2).
 
 [5]
 
 This is the remaining balance of the amount recommended from the Louisiana Workforce Commission for the three dates of service. We are also asking for | ¿reimbursement of all costs including legal costs and any applicable statutory interest and penalties.
 

 Jo Ellen Smith answered and asserted that it had fulfilled all its obligations under the Workers’ Compensation Act and that it owed no further payments. It further asserted that it acted reasonably and in good faith in investigating and handling the claim.
 

 On September 8, 2010, a trial was held at which Dr. Ming was the sole witness. At the close of the trial, the Office of Workers’ Compensation (“OWC”) found that the charges were reasonable and necessary and accepted the Commission’s recommendation of payment in accordance with the Formula. The OWC thus ruled in favor of Avenue Surgical Suites awarding $17,310 for reimbursement of additional medical expenses,
 
 [6]
 
 together with interest from the date of filing of the disputed claim for compensation; $2,500 in attorney’s fees; and $6,000 in penalties ($2,000 for each service date). This appeal followed.
 

 DISCUSSION
 

 It is well settled that factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review.
 
 Winford v. Conerly Corp.,
 
 04-1278, p. 15 (La.3/11/05), 897 So.2d 560, 569;
 
 Dean v. Southmark Constr.,
 
 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117;
 
 Masinter v. Akal Sec., Inc.,
 
 05-1236, p. 3 (La.App. 4 Cir. 6/07/06), 934 So.2d 201, 204. In applying the manifest error standard, the appellate court must determine not whether the fact finder was right or wrong, but whether the fact finder’s conclusion was a reasonable one.
 
 Bell v. Mid City Printers, Inc.,
 
 10-0818, p. 7 (La.App. 4 Cir. 1.12/22/10), 54 So.3d 1226, 1232 (citing
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 96-2840, p. 6 (La.7/1/97), 696 So.2d 551, 556).
 

 On appeal, Jo Ellen Smith asserts two assignments of error. First, it contends that Avenue Surgical Suites failed to meet its burden of proof that the medical services as invoiced were usual and customary in accordance with the Louisiana Workers’ Compensation fee schedule. Second, it contends that it was not arbitrary and capricious in its reduced payment for medical services rendered by Avenue Surgical Suites; therefore, Avenue Surgical Suites is not entitled to penalties and attorneys’ fees. We separately address each issue. We additionally address Avenue Surgical Suites’ claim for additional attorneys’ fees for work performed on appeal.
 

 (i) Reimbursement of medical expenses
 

 An employer’s obligation to furnish medical expenses is governed by La. R.S. 23:1203, which provides that “the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.” La. R.S. 23:1203(A). The
 
 *1107
 
 employer’s obligation under this section, however, is limited by La. R.S. 23:1203(B), which provides:
 

 The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.
 

 Pursuant to La.R.S. 23:1034.2, the director of the office of workers’ compensation is given the responsibility of establishing a reimbursement schedule and adopting rules and regulations for the establishment and implementation of that schedule. | fi“Should a dispute arise between a health care provider and the employee, employer, or worker’s compensation insurer, the parties shall submit the dispute to the office in accordance with the provisions of law governing disputes.” La. R.S. 23:1034.2(F).
 

 Based on the above provisions, an employer’s obligation is to pay medical expenses according to the fee reimbursement schedule or the actual charges, whichever is less.
 
 James v. A & B Builders,
 
 09-0781, p. 7 (La.App. 1 Cir. 10/23/09), 29 So.3d 541, 545. In the absence of a reimbursement schedule, the starting point for an award of medical expenses is the actual charge.
 
 Manuel v. River Parish Disposal, Inc.,
 
 96-302, 96-303, p. 8 (La.App. 5 Cir. 10/1/96), 683 So.2d 791, 795.
 
 [7]
 
 However, implicit in the above provisions is a requirement that the charges be reasonable.
 
 See Manuel,
 
 96-302, 96-303 at p. 8, 683 So.2d at 795 (noting that it is “contemplate[d] that the charges be reasonable.”) As this court has noted, “[t]he reasonableness of a particular medical fee depends on what is customary in a community for similar operations involving similar pre-operative and post-operative procedures and complications.”
 
 Adler v. Hospital Service Ass’n of New Orleans,
 
 278 So.2d 177, 180 (La.App. 4th Cir.1973).
 

 It is undisputed that Jo Ellen Smith authorized the medical treatment in question and that Avenue Surgical Suites performed that treatment. The dispute is solely over the amount billed. The director of the office of workers’ compensation administration has not established a reimbursement schedule for the specific procedures at issue. However, because Avenue Surgical Suites is an outpatient 17ambulatory surgical center, it is undisputed that the Formula set forth in § 2507 applies to these charges. As noted, the Formula is as follows: “(BILLED CHARGES) - (NONCOVERED CHARGES) = COVERED CHARGES x .90 = PAYMENT AMOUNT.” In this case, the EOBs did not indicate that any of the listed procedures that Dr. Ming performed on Ms. Muse were not covered; rather, the EOBs indicated that the charged amount for each procedure should be discounted. It is thus not disputed that the covered charge is equal to the billed charge of $10,300 per service date. Pursuant to the Formula, the payment amount is equal to 90% of $10,300 ($9,270). The OWC, agreeing with Avenue Surgical Suites, found the balance due is equal to $5,770 per treatment date ($9,270 minus the amount Jo Ellen Smith tendered, $3,500).
 

 
 *1108
 
 On appeal, Jo Ellen Smith contends that by tendering $3,500 — an amount equal to the usual and customary charge for the services provided — it satisfied its obligation under the Workers’ Compensation Act. It based this argument upon the recommendation of an “experienced third party bill review company,” Health Systems International, LLC (“HSI”). Jo Ellen Smith called no witnesses nor presented any evidence to support its position.
 

 The only evidence in the record as to whether the actual charges were reasonable is the testimony of Dr. Ming, the head of Avenue Surgical Suite’s pain management section who performed the procedures at issue and who developed the fee schedule used to bill for the procedures.
 

 Dr. Ming testified that Avenue Surgical Suites is a state and federally licensed outpatient ambulatory surgical center located in New Orleans. In 2004, Dr. Ming, who is board certified in multiple areas including pain management, became head of the center’s pain management section. In 2005, he developed a |snew fee schedule for the center; however, due to Hurricane Katrina the schedule was not implemented until 2007. The fee schedule remained in effect at the time of trial. Under the fee schedule, the center’s charge for the primary core injection procedure, which goes into the brain and spinal core area, was set at $5,000. (As explained below, this fee included $3,000 for the costs associated with the procedure and $2,000 for the center to assume the risks.) Dr. Ming testified that for multiple injections the center followed “either the AMA Guidelines, or the workline Guidelines.”
 
 [8]
 

 In developing the above fee schedule, Dr. Ming testified that he employed an unsophisticated cost-risk analysis. The cost component of his analysis was based on the number of procedures the center performed per week, the cost of the things the center used to perform those procedures, and the cost of things the center needed to have available in the event complications occurred. Insofar as the center’s costs, Dr. Ming differentiated an outpatient surgical center from the back room of a doctor’s office and from a hospital’s outpatient facility. Dr. Ming explained that he totaled the center’s fixed and variable costs — which were about $60,000 a week — and divided the total costs by the total number of procedures performed at the center each week — about twenty cases per week with half of those being interven-tional pain procedures. The cost per case was calculated to be $3,000.
 

 Given the risk involved and the potential complications with interventional pain procedures, Dr. Ming testified that the center determined that $5,000 would be |9a fair charge for the primary core injection procedure — $3,000 for the costs, as determined above, and $2,000 for the center assuming the risks of performing the procedure. Dr. Ming testified that since the 1990s the number of malpractice claims for epidurals has tripled. He further testified that to minimize the risks and the potential complications Avenue Surgical Suites limited the number of interventional pain procedures it performed to ten per week.
 

 After performing the cost-risk analysis, Dr. Ming determined that the fee schedule he had developed for the center was “in a competitive range.” He testified that “we
 
 *1109
 
 were 30 percent of what the highest charges were.... [W]e were in the middle.” In response to the questions of the trial judge about the charges being in “the middle of the area” and whether this was the geographical area or the area of the procedure or across the country, Dr. Ming explained that “[i]t’s for what other ambulatory surgery centers are charging for that procedure” in south Louisiana where he estimated there were twenty to thirty independent state licensed ambulatory surgery centers. He further explained that other ambulatory centers were charging between $3,000 and $8,500 for the primary procedure and that the center was charging $5,000, which was “sort of competitive, in the middle.” He still further explained that “[w]e actually had some major institutions that charges [ (sic) ] $15,000 to $18,000 for that one injection.”
 

 Dr. Ming identified the data that his office compiled reflecting Avenue Surgical Suites’ composite payment history for its workers’ compensation cases that involved similar procedures. The data covered the period from 2007 to 2010 during which the fee schedule he developed was in place. The data included |inredacted explanation of benefit forms for these unrelated claims. Dr. Ming testified that the center generally collected between 85% to 90% of the invoiced amounts for these procedures. He explained that the center occasionally collected a lower amount. He acknowledged that on one occasion the center was only paid 22% and 32% because he missed the deadline to appeal.
 

 On each of the three service dates Dr. Ming performed the same procedures on Ms. Muse. For safety reasons he does not put the patient to sleep for the primary core procedure, but he does give the patient sedation. He estimated that it takes him fifteen to thirty minutes to perform the procedure. He also sees the patient pre-operatively for fifteen to twenty minutes. Following the procedure, the patient has one-on-one nursing coverage through recovery. There is no follow-up examination, but there is a follow-up phone call. Dr. Ming testified that the entire cycle for each patient is about one hour. As to Ms. Muse, in particular, Dr. Ming testified that he did not recall her having any complications and thus she probably was in and out of the center in about one hour and fifteen minutes on each service date.
 

 Turning to the bills in question, Dr. Ming testified that for each service date the center billed Jo Ellen Smith, through Risk Management, $10,300.
 
 [9]
 
 For each bill, Risk Management tendered the reduced amount of $3,500 accompanied by an EOB. Each of the EOBs had four codes listed for discounting the billed amount:
 

 • Charges exceed maximum allowance.
 

 • The charge for this procedure exceeds the fee schedule allowance.
 

 In* In accordance with Title 40, Section 5101 titled statement of policy of the Louisiana Administrative Code, reimbursement reflects the mean of the usual and customary charge.
 
 [10]
 

 
 *1110
 
 • This charge has been reviewed to reflect a fair, current, and reasonable reimbursement amount based on comparisons to industry benchmarks and reimbursements for comparable services by national payors’ payment schedules.
 

 Dr. Ming was asked to compare the above four codes with those used in the historical payment data from 2007 to 2010, discussed above. He testified that only one of the four codes was different — the last one which states that this “refleet[s] a fair, current, and reasonable reimbursement amount based on comparisons to industry benchmarks and reimbursements for comparable services by national payors’ payment schedules.” Dr. Ming testified that this code was new. He also noted that when Avenue Surgical Suites sought reconsideration it also formally requested Risk Management’s data and the methodology it used to calculate the reductions it made to the invoiced amounts. He explained that he wanted this information so that he could make a comparison and determine what the center was doing differently. Risk Management not only denied the request for reconsideration, but also failed to respond to the request for information.
 

 | ^Following the protocol, Avenue Surgical Suites then filed for a review with the Commission, which recommended that the reimbursement be made based on the Formula. The trial judge questioned Dr. Ming whether the Commission’s recommendation was that Jo Ellen Smith pay 90% of the billed amount, $10,300. Answering in the affirmative, Dr. Ming explained:
 

 [Risk Management] recognized the bill as $10,300. They — no one’s disputing that the charges weren’t covered. Because the insurance covered — paid on each service. It says, how much.
 

 And so they recognize the bill as $10,300. And so I don’t think it was they were disputing that what we did was inappropriate or uncovered. And so we assume they are saying that — then to pay 90 percent of it.
 

 Given Dr. Ming’s testimony supporting the reasonableness of the charged amount coupled with the lack of any evidence to the contrary, we find no manifest error in the OWC’s award of $17,310 in additional reimbursement of medical expenses to Avenue Surgical Suites.
 
 [11]
 

 (ii) Penalties and attorneys’ fees
 

 The other issue Jo Ellen Smith raises on appeal is whether the OWC erred in awarding $6,000 ($2,000 per service date) in penalties and $2,500 in attor
 
 *1111
 
 neys’ fees. The determination of whether an employer should be cast with penalties and attorneys’ fees is essentially a question of fact subject to the manifest error or clearly wrong standard of review.
 
 James v. A & B Builders,
 
 09-0781, p. 8 (La.App. 1 Cir. 10/23/09), 29 So.3d 541, 546. The failure to timely pay medical benefits subjects the employer to a penalty of $50 per calendar day for each day that the medical benefits remain unpaid, not to exceed $2,000, plus reasonable attorneys’ fees, for each disputed claim. La. R.S. 23:1201(F). Section 1201(E) |1sprovides that “[mjedical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.” La. R.S. 23:1201(E).
 
 [12]
 
 The record in this case supports the OWC’s finding that Jo Ellen Smith was arbitrary and capricious particularly in light of its failure to produce
 
 any
 
 evidence in support of its position. We thus cannot conclude that the OWC’s award of penalties and attorneys’ fees was manifestly erroneous.
 

 (rii) Attorneys’ fees for work performed on appeal
 

 In its brief, Avenue Surgical Suites requests additional attorney fees for work performed on appeal. Although Avenue Surgical Suites failed to file an answer to the appeal, we have the authority to make such an award pursuant to La. C.C.P. art. 2164.
 
 [13]
 

 See Smith v. Pilgrim's Pride Corp.,
 
 44,080 at pp. 11-12 (La.App. 2 Cir. 2/25/09), 4 So.3d 983, 991,
 
 writ denied,
 
 09-961 (La.6/19/09), 10 So.3d 739 (citing
 
 Gandy v. United Services Auto. Association,
 
 97-1095 (La.App. 5 Cir. 10/14/98), 721 So.2d 34);
 
 see also Poissenot v. St. Bernard Parish Sheriff’s Office,
 
 09-0636, pp. 8-9 (La.App. 4 Cir. 11/24/09), 26 So.3d 829, 834-35,
 
 rev’d on other grounds,
 
 09-2793 (La.1/9/11), 56 So.3d 170 (citing
 
 Smith, supra).
 

 |14To determine the amount of attorneys’ fees, factors that are considered include “the skill exercised by the attorney and the time and work required on appeal.”
 
 Smith,
 
 44,080 at pp. 11-12, 4 So.3d at 991 (citing
 
 Lewis v. Chateau D’Arbonne Nurse Care Center,
 
 38,394 (La.App. 2 Cir. 4/7/04), 870 So.2d 515). Avenue Surgical Suites’ counsel prepared and filed an appellate brief. As Avenue Surgical Suites acknowledged in its brief, this case does not present a close factual or legal issue. The parties did not request oral argument. Given these circumstances, we find it appropriate to award Avenue Surgical Suites $1,000 in attorneys’ fees for additional work performed on appeal.
 

 DECREE
 

 For the forgoing reasons, the judgment of the Office of Workers’ Compensation is amended to award an additional $1,000 in attorneys’ fees; and the judgment, as amended, is affirmed.
 

 JUDGMENT AMENDED; AFFIRMED AS AMENDED
 

 [1]
 

 . Each bill included the following itemization of the $10,300 total charge: TF ESI LUMBAR/SACRAL 1st $5,000; LUMBAR ESI OTHER SIDE $2,500; TF ESI LUMBAR/SACRAL ADD $2,000; Fluoroscopy for placing $400; and Fluoroscopy for placing $400.
 

 [2]
 

 . Each explanation of benefits included the following itemization of the $3,500 recommended allowance: AMBUL SURG $2,800.97; AMBUL SURG $1400.49; AM-BUL SURG $1,120.39; DX X-RAY $135.92; AND DX X-RAY $135.93.
 

 [3]
 

 . This provision is set forth in La. Admin. Code, Title 40, Part, 1, Chapter 25, § 2507 (“ § 2507”).
 

 [4]
 

 . Although Avenue Surgical Suites filed its disputed claim against both Jo Ellen Smith and its third party administrator, Risk Management, the Office of Workers' Compensation ("OWC”) granted Risk Management’s motion to dismiss the claims against it.
 

 [5]
 

 . In attachment 2, Avenue Surgical Suites explained that its claim was for the billed amount of $10,300 reduced by two amounts: (i) $1,030 (10% reduction pursuant to the Formula or § 2507), and (ii) $3,500 (amount tendered by Jo Ellen Smith). The amount claimed for each treatment date thus was $5,770 (or $17,310 for all three service dates). This amount coincides with the reduction amount on the EOBs labeled "Other/Red.”
 

 [6]
 

 . As noted in the judgment, this amount "represents the total amount owed per service date $10,300.00, minus the statutory ten percent (10%) reduction and the amount already tendered by the defendant.”
 

 [7]
 

 . On the unrelated issue of whether an employer's payment of workers’ compensation indemnity benefits interrupts prescription on the employee's claim for medical benefits the holding in
 
 Manuel, supra,
 
 was not followed in
 
 Boquet v. Tetra Technologies, Inc.,
 
 02-1634 (La.2/25/03), 839 So.2d 13. In
 
 Boquet, supra,
 
 the Louisiana Supreme Court resolved a conflict among the circuits on that unrelated issue.
 

 [8]
 

 . Based on those guidelines, the second bilateral injection was priced at 50% of the first injection ($2,500); the third injection was priced at 60% of the first injection ($3,000); and the fourth level was priced at 40% of the first level ($2,000). An additional charge was imposed for the fluoroscope of $400 per area at which it is used or repositioned. Although the bills for the services in question followed these guidelines, Dr. Ming noted that the third level for some reason was priced at $2,000 instead of at $3,000.
 

 [9]
 

 . Dr. Ming acknowledged that he filed an insurance claim for his physician fee for the treatment in question and that he was paid. However, he had no idea how much he was paid. He explained that his fee was for his services — "doing the procedure itself, and me doing the interpretation of the fluoroscopy, and doing the procedure and knowing when to inject and when not to, and putting the needle where it's — hopefully, it’s supposed to be.”
 

 [10]
 

 . Louisiana Administrative Code, Title 40, pt. I, § 5101 sets forth the following general statement of policy:
 

 A. It is the intent of this reimbursement schedule to limit to the mean of the usual and customary charge all fees for medical services, supplies, and other non-medical services delivered to Workers' Compensation claimants, as authorized by law.
 

 B. The law provides that an employer or compensation insurer owes to an injured worker one hundred percent (100%) of the
 
 *1110
 
 medical fees incurred in the treatment of work-related injuries or occupational diseases (hereinafter referred to as “illness(es)”).
 

 1. It is therefore the policy of the Office of Workers' Compensation that medical bills for services should be sent to the Carrier/Self-Insured Employer for payment. Fees for covered services in excess of the amounts allowable under the terms of this schedule are not recoverable from the employer, insurer, or employee.
 

 2. It is also deemed to be in the best interest of all of the parties in the system that fees for services reasonably performed and billed in accordance with the reimbursement schedule should be promptly paid. Not paying or formally contesting such bills by filing LDOL-WC-1008 (Disputed Claim for Compensation), with the Office of Workers’ Compensation within 30 days of the date of receipt of the bill may subject the Carrier/Seif-Insured Employer to penalties and attorneys fees.
 

 [11]
 

 . The calculation is as follows: 90% of the covered charges (90% of $10,300 or $9,270) less the amount already tendered by Jo Ellen Smith ($9,270 less $3,500, which equals $5,770 per treatment or a total of $17,310 for all three treatments).
 

 [12]
 

 . See also
 
 La. Admin. Code, Title 40, Part I., § 5101 (providing that “[n]ot paying or formally contesting such bills by filing LDOL-WC-1008 (Disputed Claim for Compensation), with the Office of Workers' Compensation within 30 days of the date of receipt of the bill may subject the Carrier/Seif-Insured Employer to penalties and attorneys fees.”)
 

 [13]
 

 . La. C.C.P. art. 2164 provides:
 

 The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.