McDonald, j.
lain this workers’ compensation case, the claimant appeals a judgment declaring him no longer totally and permanently disabled; denying his choice of pharmacy; and, denying penalties and attorney fees. We affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
In 1997, John Morgan injured his neck while working as a heavy equipment operator for Barber Brothers Contracting Company, LLC. Mr. Morgan underwent a cervical fusion and returned to work about a year later but ultimately stopped working due to increased neck pain and chronic headaches. Over many years, Mr. Morgan and Barber Brothers have litigated the extent of his work-related disability and his entitlement to workers’ compensation benefits. See Barber Brothers Contracting Co., LLC v. Morgan, 02-1712 (La.App. 1 Cir. 5/9/03), 849 So.2d 563 and Morgan v. Barber Brothers Contracting, 11-1164 (La.App. 1 Cir. 4/25/12), 92 So.3d 524. At the time of the current trial, Mr, Morgan was 45 years old, continued to have chronic migraine headaches, and had not worked for approximately 15 years.
The current dispute involves whether Mr. Morgan remains permanently totally disabled and to which party belongs the choice of pharmacy for his prescription medications. On June 9, 2015, the workers’ compensation'judge (WCJ) signed a judgment in three consolidated. matters: (1) ordering Barber Brothers to pay up to $750 of prior unpaid prescription bills to Injured Workers’ Pharmacy (IWP); (2) declaring that Mr. Morgan was not entitled to his choice of pharmacy, IWP; (3) denying Mr. Morgan’s claim to have Barber Brothers pay for erectile dysfunction therapy, testosterone therapy, and sleep apnea testing; (4) denying Mr. Morgan’s claim for penalties and attorney fees; and (5) declaring that, as of June 9, 2015, Mr. *679 Morgan was no longer totally and permanently disabled.
Mr. Morgan appeals from the adverse judgment. In his assignments of error, he claims the WCJ erred in finding: (1) he is not entitled to his choice of pharmacy; (2) Barber Brothers is not responsible for more than $750 of unpaid pharmacy bills to IWP; (3) he is no longer totally and permanently disabled; and, (4) he is not entitled to penalties and attorney fees. He does not appeal the WCJ’s denial of his claims for Barber Brothers to pay for erectile dysfunction therapy, testosterone therapy, or sleep apnea testing.
I «CHANGE OF CONDITION
In his fourth assignment of error, which we address first, Mr. Morgan contends the WCJ erred in declaring that, as of June 9, 2015, he is no longer permanently and totally disabled.
Under LSA-R.S. 23:1221(2)(c), compensation for a permanent total disability is awardable only if the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. Evidence that an employee’s return to gainful employment would require that he work in substantial pain is not sufficient to support an award of permanent total disability. See Bank of Winnfield and Trust Co. v. Collins, 31,473 (La.App. 2 Cir. 2/24/99), 736 So.2d 263, 266-67; also see Morgan v. Glazers Wholesale Drug Co., 46,692 (La.App. 2 Cir. 11/2/11), 79 So.3d 417, 422-24; Champagne v. Roclan Systems, Inc., 06-1928 (La.App. 1. Cir. 2/20/08), 984 So.2d 808, 823, writ denied, 08-1356 (La.9/26/08), 992 So.2d 989.
Under LSA-R.S. 23:1310.8(Bj, a WCJ may make an award ending, diminishing, or increasing a previous compensation award based on a change in the claimant’s condition. The party moving for a modification of a previous compensation award must prove the change in condition by a preponderance of the evidence. Guy Hopkins Const. Co. v. Poole, 13-2072 (La.App. 1 Cir. 6/6/14), 148 So.3d 14, 16, writ denied, 14-1371 (La.10/3/14), 149 So.3d 798. Thus, in this case, Barber Brothers bore the burden of proving that Mr. Morgan was ho longer permanently and totally disabled. A WCJ’s factual finding that a claimant’s condition has changed is entitled to great weight' and will not be disturbed unless clearly wrong. Id. Also see Olivier v. Olivier Builders, 15-217 (La.App. 3 Cir. 11/18/15), 180 So.3d 540, 544, writ denied, 16-0250 (La.4/8/16), 191 So.3d 585.
In October 2012, Mr. Morgan completed an inpatient, pain treatment program where he was weaned from narcotic pain medications he had. been taking for several years. He continued on non-narcotic pain medications for headaches, as well as several other medications.
14After Mr. Morgan’s completion of the pain treatment program, Barber Brothers filed a-petition, to modify Mr. Morgan’s disability, status. . In support of its petition,. Barber Brothers filed a July 1, 2013, letter from Dr, Anthony S, Ioppolo, who performed a neurosurgical evaluation of Mr. Morgan’s condition, and an August 26, 2013 report, by Dr. Clark, Mr. Morgan’s treating physician of 13 years. Both doctors noted that Mr. Morgan had continuing complaints of migraine headaches, and Dr. Clark noted that Mr. Morgan’s chronic headaches were the primary reason he has been unable to return to the work force. Dr. Ioppolo opined that Mr. Morgan was *680 capable of gainful employment, especially since he no longer took narcotic pain medications, but that he (Dr. Ioppolo) would “certainly place limitations of no more than light duty work[,] in light of [Mr. Morgan’s] continuing complaints of pain.... ” Dr. Clark stated that he was not opposed to Mr. Morgan attempting to return to gainful employment in a sedentary to light duty capacity, but he qualified his statement with “but I do not feel he will be able to stay at work secondary to his migraine headaches that are chronic and recurrent since his cervical fusion.” In a December 2013 deposition, Dr. Clark admitted that Mr. Morgan’s switch to non-narcotic pain medications had provided him with some level of functional improvement. Dr. Clark continued to believe, however, that Mr. Morgan’s chance of returning to the work force was “slim.” He stated that he was willing to let Mr. Morgan return to work part-time, but he was skeptical that such would succeed because Mr. Morgan’s headaches would lead to “a lot of absenteeism.” He noted that Mr. Morgan would have to desire to return to work, but, even if he did, “the likelihood of him getting back in the workforce successfully [was] not good because of his headaches.”
At trial, Mr. Morgan testified about his condition. He stated that his pain, primarily headaches, had worsened since he switched to non-narcotic pain medications and that the new medication caused nausea and vomiting. Because of the pain, he must lay down three or four times a day on most days. He also experiences memory loss and insomnia. Mr. Morgan stated that he is able to perform tasks such as driving, grass cutting, raking leaves, or working on his car, but that he always pays afterwards with increased pain. He agreed that his migraines were the primary reason he could not work and that he had not tried to work for any employer, because he “know[s] what their answer is going to be when I say I got to have Ra spot to lay down.” He admitted that he might be able to function at a job for a couple of hours a day if he could change positions but doubted that he could work five days a week.
After reviewing the record, we are unable to say that the WCJ erred in finding that Barber Brothers met its burden of proving that Mr. Morgan is no longer totally and permanently disabled. In light of the record as a whole, we afford great weight to the WCJ’s apparent factual determination that Mr. Morgan is physically able to engage in some type, of employment or self-employment, even though such would require that he work in substantial pain. We acknowledge Dr. Clark’s skepticism that an attempt to work by Mr. Morgan would be unsuccessful. As earlier noted, however, evidence that an employee’s return to gainful employment would require that he work in substantial pain is not sufficient to support an award of permanent total disability. See Bank of Winnfield, 736 So.2d at 266-67; also see LSA-R.S. 23:1221(2)(e) (specifically indicating that compensation for a permanent total disability is awardable only if the employee is physically unable to engage in any employment or self-employment, including “employment while working in any pain.”) The WCJ’s judgment on this issue is not clearly wrong.
CHOICE OF PHARMACY
In his first three related assignments of error, Mr. Morgan contends the WCJ erred in concluding he was not entitled to his choice of pharmacy. He claims a prior OWC judgment dated September 2, 2010, which denied him his choice of pharmacy, is not res judicata as to his current right to choose. He also claims that he is now entitled to choose his pharmacy, because Barber Brothers has failed *681 to fulfill its obligation to furnish “all necessary drugs” under applicable workers’ compensation law. We decline to address the res judicata issue — even if the 2010 judgment did not have a res judicata effect on Mr. Morgan’s right to choose a pharmacy, Mr. Morgan has not shown that Barber Brothers failed to furnish his necessary medications.[1]
| «Under LSA-R.S. 23:1203(A) and (B), the employer shall furnish all necessary medical expenses for a work-related injury and is obligated to pay the “mean of the usual and customary charges” for such expenses. See Asberry v. The American Citadel Guard, Inc., 04-0929 (La.App. 1 Cir. 5/6/05), 915 So.2d 892, 894; Avenue Surgical Suites v. Jo Ellen Smith Convalescent Center, 11-0026 (La.App. 4 Cir. 5/18/11), 66 So.3d 1103, 1106-07. An Injured employee is not entitled to payment of all future medical treatment occasioned by an accident; rather, the employer’s liability is limited to that which is necessary. Church Mut. Ins. Co. v. Dardar, 13-2351 (La.5/7/14), 145 So.3d 271, 281. Further, implicit in the worker’s compensation law regarding an employer’s obligation to pay medical expenses is a requirement that the charges be reasonable. Avenue Surgical Suites, 66 So.3d at 1107.
In this case, Resolution Services, Inc. (RSI) was the third party administrator that handled Barber Brothers’s workers’ compensation claims. Mr. Gary Lee, RSI’s president, was the adjuster who handled Mr. Morgan’s claim during the relevant time period. In 2006 or 2007 and continuing through 2013, Mr. Lee was concerned over the quantity, continually changing-nature, necessity, and expense of Mr. Morgan’s medications, particularly because his case was several years old and, at that point, was a palliative care case. Mr. Lee’s concern was based, in part, on a 2010 opinion by Dr. Anthony S. Iopollo that Mr. Morgan had reached maximum medical improvement, that his medication usage was far in excess of that which was normally justified by his diagnoses, and certain medications and recommended treatments were unnecessary or unrelated to his work injury. For the years 2010, 2011, and 2012, Mr. Lee estimated that Mr. Morgan’s medical expenses ranged between $70,000 and the upper $90,000s.
According to Mr. Morgan, it was because of Barber Brothers’s and Mr. Lee’s' “persistent failure to authorize payment and flat out refusal to pay” that Mr. Morgan eventually switched from Progressive, Barber Brothers’s choice of pharmacy, to IWP to have his prescriptions filled. To support his claim, Mr. Morgan points tó several communications, beginning in 2006 and continuing through 2013, wherein Barber Brothers’s attorney or Mr. Lee questioned Mr. Morgan’s attorney or Dr. John Clark, Mr. Morgan’s treating physician, regarding the cost, necessity, or unapproved dispensation or recommendation of certain medications and/or treatment.
|7However, a careful review of these communications reveals that there are only two in which Mr. Lee indicated that RSI *682 would no longer pay for Mr. Morgan’s prescriptions, and in both cases, the denials were reasonable. In an August 2010 fax, Mr. Lee informed Dr. Clark that he had terminated authorization .for erectile dysfunction and testosterone, injections based on a second medical opinion that such were unrelated to Mr. Morgan’s 1997 work-related injury. Later, in an April 2011 judgment, a previous WCJ denied Mr. Morgan’s claims for these medications as premature until he completed the inpatient pain treatment program. We note that the current judgment also denies Mr. Morgan’s claims for these medications, and Mr. Morgan has not appealed that denial.
Mr. Lee’s second denial of medications came after Mr. Morgan’s completion' of the inpatient pain treatment program in 2012. In an October 2012 letter to Dr. Clark, Mr. Lee noted his anticipation that Mr. Morgan’s overall treatment plan would substantially change due to his discontinuation of narcotic medications. He requested that Dr. Clark submit all treatment and medication requests for preapproval until agreement on a global treatment plan for Mr. Morgan’s palliative care had been reached. He noted that such was required by the Medical Treatment Guidelines for Pain Management (guidelines promulgated by the Louisiana Office of Workers’ Compensation (OWC) under LSA-R.S. 23:1203.1), In a December 2012 letter to Dr. Clark, Mr. Lee asked Dr. Clark to participate in a meeting with him and the attorneys to agree on Mr. Morgan’s global treatment plan, to identify the lead pres-criber of Mr. Morgan’s medications, and to discuss Mr. Morgan’s potential return to employment. In a February 2013 letter, Mr. Lee again asked Dr. Clark for a global treatment plan and explained that such was required by the OWC. He indicated that he would continue to pay.for Mr. Morgan’s current medications and treatments through February to give Dr. Clark time to comply. In a follow up letter in mid-February 2013, Barber Brothers’s attorney informed Mr. Morgan’s attorney that Mr. Lee had repeatedly and unsuccessfully requested a global treatment plan from Dr. Clark. He stated that, as of March 1, 2013, Barber Brothers would not pay for Mr. Morgan’s treatment and medications unless preapproved and until a global treatment plan was in place. On March 4, 2013, Mr. Lee sent a fax to Dr, Clark indicating that, on that day, he had been forced to withhold approval for several of Dr. Clark’s .prescriptions for Mr. Morgan because there was no global treatment plan. Mr. Lee testified that, following Lthat March 4 letter, he withheld approval' of Mr. Morgan’s medications and treatment for approximately seven to eight weeks.
In mid-March 2013, Mr. Morgan’s attorney emailed Barber Brothers’ attorney that three appellate courts (not including this Court) had recently held that the workers’ compensation law requiring global treatment plans did not retroactively apply to injuries occurring prior to the law’s effective date.[2] After consulting with Mr. Lee, Barber Brothers’s attorney told Mr. Morgan’s attorney that Barber Brothers would pay for Mr. Morgan’s prescriptions from Progressive. Mr. Morgan’s attorney responded that Mr. Morgan would continue.to use IWP, that approvals of Mr. *683 Morgan’s medications had been “too hit and miss,” and that the attorney believed that using IWP was the-only method to insure that Mr. Morgan would receive his medication in a timely and' appropriate manner under the workers’-compensation act. Subsequently, Mr. Lee paid IWP for the six to eight weeks of medications he had previously denied in order to allow Mr. Morgan time to switch back to the Progressive plan.
Despite Mr. Morgan’s assertion that Barber Brothers failed to fulfill its obligations to furnish his necessary medications, our review- of the record indicates that Barber Brothers and RSI, through Mr. Lee, have expended considerable effort over many years to accommodate Mr. Morgan’s unique medical needs. Given the age of Mr. Morgan’s case, the large number of medications still being prescribed, the legitimate uncertainty as to the necessity of some of the medications, the- extraordinary costs of the medications, and the uncertainty as to whether some were necessitated by his work related injury, we conclude that Barber Brothers’s and Mr. Lee’s actions in this case wSre reasonable under the circumstances.- As earlier stated, Barber Brothers’ obligation under LSA-R.S. '23:1203(A) and (B) is to furnish all “necessary” medical expenses, not all medical expenses. The use of the term “necessary” means that this obligation has limits — that is, the obligation only extends to those medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work injury and only to those charges that are usual and customary for the expenses. Church Mut. Ins. Co., 145 So.3d at 281. We conclude that Mr. Morgan has not shown that Barber Brothers has | Hfailed in its obligations. Thus, he has not shown that he is now entitled to his choice of pharmacy; nor has he shown that the WCJ erred in ordei’ing Barber Brothers to pay no more than $750 of unpaid prescription bills to IWP. These assignments of error are meritless.
PENALTIES AND ATTORNEY FEES
In assignments of error numbers five and six, Mr. Morgan contends the WCJ erred in failing to award him penalties and attorney fees against Barber Brothers. He also seeks additional attorney fees for work done on appeal.
Under LSA-R.S. 23:1201(F), an employer or insurer may be assessed with penalties and attorney fees for the failure to provide payment in accordance with Section 1201. Penalties and attorney fees are recoverable unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. LSA-R.S. 23:1201(F)(2). A claim is reasonably controverted when the employer has sufficient factual and/or medical information to reasonably counter evidence presented by the claimant. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890. A determination of whether an employer has reasonably controverted a claim is-a-question of fact and is subject to the manifest error standard of review, Arabie Bros. Trucking Co. v. Gautreaux, 12-0849 (La.App. 1 Cir. 12/21/12), 111 So.3d 1088, 1092, writ denied, 13-0536 (La.4/26/13), 112 So.3d 844.
The record ¾ this case establishes that Barber Brothers had sufficient factual and medical information to challenge Mr. Morgan’s disability status and to question the necessity of his medical expenses. Thus, we find the WCJ-did not err in denying Mr. Morgan’s claim for penalties and attorney fees. For the same reasons, we also reject his claim for attorney fees incurred on appeal.
*684 CONCLUSION
For the foregoing reasons, the June 9, 2015 judgment is affirmed. Costs of the appeal are assessed to John Morgan.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.

. Within the scheme of the workers’ compensation law, the concept of modification is unique, because, in some circumstances, it allows a case to be reopened and an award amended after the judgment becomes final. Res judicata does not preclude litigation seeking a change in compensation benefits based on a change in disability and does not bar relitigation of such claims subject to the WCJ’s modification jurisdiction, as set forth in LSA-R.S. 23:1310.8(A) and (B). Albert v. Air Products and Chemicals, 15-0525 (La.App. 1 Cir. 1/21/16), 186 So.3d 743, 747. However, whether the WCJ’s modification-jurisdiction extends to a party's request to change pharmacy is a different question and one we need not answer here.

. In Church Mut. Ins. Co. v. Dardar, 145 So.3d.at 278, 287-88, the Louisiana Supreme Court has since held that LSA-R.S, 23:1203.1, the statute authorizing the enactment of the Louisiana Medical Treatment Guidelines, can be retroactively applied to cases where the request for medical treatment and/or the dispute arising out of a request for medical treatment originated after the effective date of the medical' treatment schedule, but where the compensable accident, injury, or occupational disease occurred prior to that date.